IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AMERICAN SAFETY CASUALTY
INSURANCE COMPANY,

        Plaintiff,

v.

BIO-TECH SOLUTIONS, INC.,

        Defendant.

CIVIL ACTION NO.
1:05-1CV-3152-JEC

## ORDER & OPINION

This case is presently before the Court on defendant's Motion to Transfer Action [14].[1] The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that the motion should be **DENIED**.

### BACKGROUND

This suit is an action to change venue from the Northern District of Georgia to the Southern District of Texas. Defendant Bio-Tech Solutions is a Texas corporation, with its sole office in

---

[1] Plaintiff has also filed a Motion for Summary Judgment [39] on February 20, 2007, two Motions to Strike [50,51] on March 19, 2007; and a Motion to Supplement and Take Deposition of Kirk Bloomquist [53] on March 19, 2007. Defendant has also filed a Motion for Summary Judgment [40] on February 20, 2007. None of these motions have yet been submitted to the Court, as the response/reply time has not yet expired.

the City of Edinburg, in Hidalgo County, Texas. Bio-Tech has no subsidiaries or affiliates. (Def.'s Mot. to Transfer Action "Def.'s Mot."[14-2] at 2.) Additionally, Bio-Tech's CEO, Roberto M. Garcia, is a licensed attorney. (Pl.'s Resp. to Mot. to Transfer Action "Pl.'s Resp." [17-1] at 8.) With the exception of the construction project in Florida that is at the heart of this dispute, Bio-tech normally conducts all of its business in Texas. (Def.'s Mot. at 3.) Plaintiff American Safety Casualty Insurance Company ("ASCIC") is a Georgia Corporation, with its principal place of business located in Cobb County, Georgia. (Pl.'s Resp. at 1.)

In 2004, Bio-Tech purchased an insurance agreement from ASCIC. The agent who sold the policy to Bio-Tech is Kirk Bloomquist, who, at the time of the sale, worked for an insurance agency in Mercedes, Texas. Currently, Mr. Bloomquist still works in Mercedes, Texas. All the Bio-Tech employees, current and former, who would have any knowledge of the insurance contract still reside in Texas. (Entire ¶ Def.'s Mot. at 2-3.)

The insurance contract contains a "Consent to Jurisdiction" clause confining all suits, claims, or issues that might arise under the contract to the jurisdiction of the Superior Court of Cobb County, Georgia. (Pl.'s Resp. at 2.):

2

AO 72A
(Rev.8/82)

17. Consent to Jurisdiction

By accepting this policy or by presenting a "claim" which an insured contends is or may be covered under this policy the Named Insured and any other insured submits themselves to the jurisdiction of the Superior Court of Cobb County, Georgia and agrees that such court shall have jurisdiction and venue for purposes of determining all rights and obligations under this agreement. Any insured expressly consents to the jurisdiction and venue of the Superior Court of Cobb County, Georgia for any "suit" brought to interpret or enforce the provisions of this agreement.

Additionally, the contract contains a "Choice of Law" provision mandating that the "policy shall be interpreted under the laws of the State of Georgia." (*Id.*) Moreover, both the policy's application form and the binder containing the policy that was later issued were marked with an Atlanta address. (*Id.* at 10.) Further, the application was submitted to a computer system based in Atlanta, and the policy was drafted by ASCIC, an Atlanta-based company. (*Id.*) Any of ASCIC's employees who have dealt with any issues in this lawsuit reside in Georgia. (*Id.*)

In February of 2005, Bio-Tech contracted with S/G Contractor, Inc. to install a new roof on a number of units in a Florida apartment complex.[2] (*Id.* at 2.) Both the project manager, John Portillo, and the majority of the crew that worked on the Florida project reside in Texas. (Def.'s Mot. at 8.) During the

---

[2] Though Bio-Tech denies this allegation, ASCIC offers a copy of the agreement as evidence. See Pl.'s Resp. [17] at Ex. B.

construction project, between February 26-27, heavy rains occurred. (Pl.'s Resp. at 3.) Purportedly, due to Bio-Tech's failure to adequately protect the exposed roof prior to the rainstorm, a number of units were damaged. (*Id.*)

In March, ASCIC became aware of the water damage. (Pl.'s Resp. at 3.) Two months later, ASCIC notified Bio-Tech that it would defend Bio-Tech, subject to reservations concerning possible misrepresentations by Bio-Tech in Bio-Tech's Environmental Services Application for insurance. (*Id.*) Specifically, the application indicates that defendant is involved in "Commercial Asbestos Abatement, Commercial Lead Abatement, Commercial Microbiological Decontamination, and Residential Microbiological Decontamination." (*Id.*) The above activities are specialties of ASCIC's. (*Id.*)

Nowhere in the application does Bio-Tech indicate that it is involved in roofing, which ASCIC maintains is a high-risk practice. (*Id.*) Had ASCIC been aware of Bio-Tech's involvement in roofing, ASCIC indicates that it either would not have agreed to insure defendant or, pursuant to company guidelines, it would have included specific exclusions eliminating water damage arising from the failure to properly protect an exposed roof. (Pl.'s Compl. for Declaratory Judgment [1] ¶ 24.) Consequently, ASCIC filed a complaint for declaratory judgment in the Superior Court of Cobb

4

County, Georgia to determine these coverage issues. (Pl.'s Resp. at 4.)

Pursuant to 28 U.S.C. § 1332, Bio-Tech properly removed this action to this Court. There is complete diversity of citizenship, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (Def.'s Notice of Removal [1] ¶ 3.) Additionally, venue is proper under 28 U.S.C. § 1446(a), as this district and division embrace the place in which the removed action was pending (*Id.* ¶ 8.)

Presently, pursuant to 28 U.S.C. § 1404(a), Bio-Tech seeks to transfer this case to the United States District Court for the Southern District of Texas. (Def.'s Mot.) ASCIC opposes any change in venue, and requests that the Court uphold the "Consent to Jurisdiction" clause within the insurance contract. (Pl.'s Resp.)

## DISCUSSION

This case is before the Court on defendant Bio-Tech's Motion to Transfer Action, pursuant to 28 U.S.C. § 1404(a). Defendant seeks to transfer this action from the Northern District of Georgia to the Southern District of Texas. Section 1404(a) allows for a transfer of a civil action "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). Biotech argues that each of these factors are present. Further, Biotech argues that the Court should afford no deference to

5

plaintiff's choice of forum because it lacks any significant connection to the underlying claim.

Plaintiff, American Safety Casualty Insurance Co. ("ASCIC"), opposes Bio-Tech's motion, noting that this action is brought pursuant to an insurance contract that contains a "Consent to Jurisdiction" clause. This clause provides that the insured (the defendant) agrees to submit itself to the jurisdiction of Cobb County, Georgia for any suit brought to interpret or enforce the contract. Indeed, ASCIC originally filed suit in the Superior Court of Cobb County, Georgia, from whence it was removed to this federal Court by defendant. ASCIC argues that this clause trumps any concerns about convenience to witness or parties.

Further, ASCIC denies that the Southern District of Texas is more convenient. Finally, ASCIC notes that the contract contains a "Choice of Law" provision that requires the use of Georgia Law to decide any disputes. ASCIC contends that a Georgia court would be more familiar with Georgia Law than a Texas court.

## I. Impact of Forum Selection Clause on § 1404(a) Motion

Defendant has contended that Georgia is an inconvenient forum for this action. Greatly hampering defendant's argument is the existence of a forum selection clause that specifies Georgia as the forum in the event of litigation between the parties.

In *P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804 (11th Cir. 2003)(per curiam), the Eleventh Circuit lists several "principles [that] have been established for consideration of whether a case should be removed to another jurisdiction pursuant to a forum selection clause." *Id.* at 807.  Four are directly applicable to the present case:

1) "The burden is on the party opposing the enforcement of the forum selection clause to show that the contractual forum is sufficiently inconvenient. . . ." *Id.* citing *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

2) A forum selection clause's validity "is determined under the usual rules governing the enforcement of contracts in general." *Id.,* citing *In re Ricoh Corp.*, 870 F.2d at 573-574.

3) "Under Section 1404(a). . .a choice of forum clause [is] 'a *significant* factor that figures *centrally* in the district court's calculus.'" *Id.,* quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (emphasis in original). Rarely will a forum selection clause "'be outweighed by other 1404(a) factors.'" *Id.,* quoting *In Re Ricoh Corp.*, 870 F.2d at 573.

4) By enforcing the designated forum provision, the court merely enforces the forum that parties have already chosen *See Id.,* citing *In Re Ricoh Corp.*, 870 F.2d at 573.

Thus, while Bio-Tech is correct in its assertion that a forum selection clause does not render other § 1404(a) factors irrelevant, it is nonetheless a rare case in which a valid clause will not be enforced.  Moreover, even without a forum selection clause, "if the transfer would merely shift inconvenience from one

7

party to the other, or if the balance of all factors is but slightly in favor of the movant, plaintiff's choice of forum should not be disturbed and transfer should be denied." *Bell v. K Mart Corp.*, 848 F. Supp. 996, 1000 (N.D. Ga. 1994)(Carnes, J.), quoting *Grey v. Cont'l Mktg. Assocs.*, 315 F. Supp. 826, 831 (N.D. Ga. 1970)(Edenfield, J.)

Accordingly, mindful of the tough obstacles that faces the defendant, the Court examines its contentions.

## II.  Validity of Forum Selection Clause

The defendant attacks the validity of the forum selection clause. The validity of a forum selection clause is determined under the general rules governing the enforcement of contracts. Absent allegations that the contract is void, the Court will not presume it to be illegal. Bio-tech portrays the forum selection clause as merely a "boilerplate" provision in a standard form contract, purposefully designed to discourage potential claimants. Due to disparities in bargaining power, Bio-tech argues, it was unable to negotiate an equitable contract.

Bio-Tech does not allege fraud, duress, or any misrepresentation; nor is there a hint of any misconduct. *See In Re Ricoh Corp.*, 870 F.2d at 573 (examining same factors to determine validity of contract). Moreover, the terms of this "boilerplate" provision are entirely reasonable given that ASCIC's headquarters

are in Cobb County. *See, e.g., id.* at 573 (finding forum selection clause reasonable given that defendant's headquarters located in chosen forum); *P & S Bus. Machs., Inc.*, 331 F.3d at 808 (finding forum selection clause reasonable given that defendant's headquarters located in chosen forum). Indeed, it is understandable that an insurance company, such as ASCIC, might wish to confine litigation to one forum governed by the same law, in order to reduce confusion and potential litigation costs.

Essentially, Bio-tech uses the language of unconscionability and adhesion, but specifically it alleges neither. The mere use of such loaded terms is not enough to invalidate a contract, nor is the fact that the harsh realities of the business world restricted Bio-Tech's choices. Ultimately, Bio-Tech fails "to show a disparity in bargaining power such that it would be unjust or unreasonable to enforce the forum selection clause." *McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1302 (M.D. Ga. 2003)(Sands, J.)(finding that there was not an adhesion contract where there was an opportunity not to purchase); *see also, Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.*, 2004 WL 3576601, *3 (N.D. Ga. 2004)(Story, J.)(finding that a difficult business decision will not invalidate contract).

The Court therefore finds the forum selection clause to be valid. Though not dispositive, this determination creates a heavy

9

burden for Bio-Tech to overcome in attempting to demonstrate that Georgia is an inconvenient forum.

## III. Analysis of § 1404(a) Factors

### A.   Convenience of Parties

Defendant Bio-Tech argues that Texas would be a more convenient forum for the parties than the present forum. Bio-tech claims that its cost to litigate in the present forum would be burdensome. But the "relative financial ability [of a party] to undertake a trial in any particular forum" is a factor that, while "entitled to consideration, [is] not accorded great weight." *Grey*, 315 F. Supp. at 831. Further, that Bio-tech is a Texas corporation has little bearing on the Court's analysis. The Court places little weight on the "domicile of corporate defendants and their place of incorporation . . . . ". *Id.* at 831-2.

Shifting the forum would only serve to shift the burdens between the parties. Plaintiff would then become the out-of-state party in defendant's home district. Bio-Tech focuses on the fact that plaintiff expended resources marketing and negotiating contracts in Texas. That ASCIC has been willing to spend money marketing and negotiating contracts in Texas does not mean that a Texas forum for litigation would still not be burdensome for it. Costs for the former activities are predictable and relatively moderate in amount. Litigation, on the other hand, is costly and

the expenses attendant to it are highly unpredictable. Undoubtedly, concerns about these potential expenses were a part of ASCIC's calculation when it included the Choice of Jurisdiction and Choice of Law provisions in the contract. Indeed, the existence of these two provisions was likely a factor in ASCIC's decision to conduct business outside of Georgia.

In short, defendant has not shown that the Southern District of Texas is a more convenient forum for the parties. Instead, shifting the forum to Texas would be less convenient for the plaintiff, ASCIC.

### B. Convenience of Witnesses

Te convenience of witnesses is an important factor in a §1404(a) analysis. Bio-tech convincingly argues that the key witnesses currently reside in Texas. Bio-Tech identifies these potential witnesses and summarizes their likely testimony. In rebuttal, ASCIC states only that any of its employees that have had any dealing with issues in this lawsuit reside in Georgia. Without any identification of who these potential witnesses are, however, the Court must conclude that the key witnesses reside in Texas.

Nevertheless, where witnesses reside is only one half of the Court's analysis. The Court must also examine whether "testimony can[] effectively be presented by depositions." *Grey*, 315 F. Supp. at 831. Bio-tech does not indicate why depositions would be

11

ineffective in presenting its witnesses' testimony. "Litigants are not necessarily deprived of their day in court because they have to use deposition testimony rather than live testimony. . . . The use of deposition testimony for some witnesses in the event of trial is sometimes more cost effective and regularly used." *McNair*, 279 F. Supp. 2d at 1302. Though depositions might not be as effective as live testimony, neither medium is fundamentally inadequate.

Thus, while the key witnesses may reside in Texas, their testimony could be presented by video deposition.

### C.  Interest of Justice

More important than any of the other factors analyzed in this particular case is the interest of justice, which weighs heavily in favor of denying defendant's Motion to Transfer. The sanctity of contractual obligations "are vital to our judicial system." *In re Ricoh Corp.*, 870 F.2d at 573 citing *Stewart*, 487 U.S. at 33 ("[E]nforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.") (Kennedy, J., concurring); *see also Stewart*, 810 F.2d 1066, 1075 (11th Cir. 1987)(en banc)("Where, as here, the non-movant has not shown that it would be unjust to honor a forum selection clause that it has freely given, 'the interest of justice' requires that the non-movant be

12

held to its promise.") (Tjoflat, J., concurring). The interests of justice are advanced by fully enforcing valid contracts that were freely and fairly entered into by experienced business professionals.

Further, the Choice of Law provision, for which defendant does not object, also weighs in plaintiff's favor. That provision indicates that Georgia law should apply. Despite what Bio-Tech might argue otherwise, a choice of law provision is more than "an insignificant factor" in the court's analysis. "'[T]here is an appropriateness. . . in having the trial. . .in a forum that is at home with the state law that must govern the case." *Bell*, 848 F. Supp. at 1000 quoting *Delay & Daniels, Inc. v. Allen M. Campbell Co.*, 71 F.R.D. 368, 373 (D.S.C. 1976). Thus, while a federal court in Texas can certainly apply the law of Georgia, a Georgia federal court is better equipped to do so.

Moreover, this Choice of law provision has even deeper implications under Georgia law, as "it is well established under Georgia contract law [that]. . . if a party signs a paper, the presumption of law is that he knows the contract and has notice of the facts recited in it." *McNair*, 279 F. Supp. at 1301. Consequently, the Court must assume that when Mr. Garcia, Bio-Tech's CEO and also a licensed attorney, signed the contract, Bio-Tech had notice of and intended to fully perform all of its

contractual obligations, including the Consent to Jurisdiction Clause. To be sure, Bio-Tech does not claim ignorance, or even lack of understanding, of this provision. Rather, for various reasons that fall far short of invalidating a contract, it argues that the provisions should simply not be enforced. The interest of justice would not be advanced if businessmen, especially those with law degrees, were allowed to so easily abdicate their contractual responsibilities.

### D.   Weight Afforded to Plaintiff's Choice of Forum

"Great weight should be given to plaintiff's choice of forum, especially if the one he chose is in the district in which he resides. . . ." *Grey*, 315 F. Supp. at 831. Bio-Tech's arguments for departing from this standard are unpersuasive. The one case Bio-Tech offers in support of its position, *Bell v. K Mart Corp.*, offers little guidance, if any at all. In *Bell*, none of the plaintiffs resided in the chosen forum, nor did any the key witnesses live or work in Georgia. Additionally, the applicable law was going to be from a foreign jurisdiction. In contrast, ASCIC's headquarters is in the present district, and the applicable law will be from this state. The most glaring difference between *Bell* and the case at hand, however, is the complete absence of a forum selection clause in *Bell* to help guide the court's analysis. Ultimately, it is not merely plaintiff's choice of forum that the

14

court must afford weight too, but defendant's, as well. In signing the contract, Bio-tech also chose to try the case in this district.

It is an exceptional case in which a valid forum selection clause is not enforced, and the present facts do not suggest a deviation from the norm. First, the interest of justice weigh heavily in favor of maintaining this forum. Second, changing forums most likely would only shift the inconvenience from one party to another. Only one factor, convenience to potential witnesses, tilts in favor of defendant. And even this factor is mitigated by the absence of any evidence of how deposition testimony would be ineffective. This one factor cannot displace the central role that a forum selection clause plays in a court's analysis and the deference given to plaintiff's choice of forum. Consequently, defendant's Motion to Transfer Action [14] is **DENIED**.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant's Motion to Transfer Action [14].

SO ORDERED, this 26 day of March, 2007.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)